39719. NALLEY et al. v. SELECT INSURANCE COMPANY.

ORDER OF COURT.

After plenary consideration of this matter, it is found not to satisfy the criteria for the grant of certiorari and the writ is therefore vacated.

*All the Justices concur, except Hill, C. J., and Weltner, J., who concur specially and Clarke, Smith and Gregory, JJ., who dissent.*

ORDERED DECEMBER 5, 1983.

*Patrick J. Fox, George E. Glaze,* for appellants.
*Robert P. Bleiberg,* for appellee.

*John E. James, William S. Stone, Thomas S. Carlock, R. Clay Porter,* amici curiae.

HILL, Chief Justice, concurring specially.

While I disagree with the Court of Appeals' holding that this case falls under paragraph (c) of OCGA § 33-34-5 (Code Ann. § 56-3404b), rather than under paragraph (b), I concur in the dismissal of certiorari because, in my view, the result reached by the Court of Appeals (affirmance of the trial court) is correct.

First, I must disagree with the Court of Appeals' holding. Our "no-fault" act, OCGA § 33-34-1 et seq. (Code Ann. § 56-3401b et seq.), became effective on March 1, 1975. OCGA § 33-34-5(b) (Code Ann. § 56-3404b) is applicable to applications for policies of motor vehicle liability insurance. OCGA § 33-34-5(c) (Code Ann. § 56-3404b), which was added by amendment prior to the effective date of the act, is applicable to such policies as were in effect on March 1, 1975. Mrs. Nalley's policy was not issued until November, 1976. Therefore, in my view, subparagraph (c) is not applicable and subparagraph (b) is.[1]

Nevertheless, I agree with the result reached by the Court of Appeals. In construing OCGA § 33-34-5(b) (Code Ann. § 56-3404b) in *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709, 711 (300 SE2d 673) (1983), we *held* ". . . that the requirements of subsection (b) are *satisfied by two signatures,* one for acceptance or rejection of optional PIP and another to indicate acceptance or rejection of vehicle damage coverage." (Emphasis supplied.)[2] While in deciding *Flewellen,* we held that two signatures satisfied the statutory requirements, we did not *hold* that two signatures were mandatory in every case.

---

[1] Although the Court of Appeals decision to the contrary is adopted one possible construction of OCGA § 33-34-5 (c) (Code Ann. § 56-3404b), in view of its legislative history, I am unable to agree with that construction. The "no-fault" act as originally enacted applied only to applications. Ga. L. 1974, p. 113, § 4. So as to apply to existing policies as well as new ones, the act was amended to cover policies already issued. Ga. L. 1975, p. 3, § 1. See *Wiard v. Phoenix Ins. Co.,* 251 Ga. 698 (310 SE2d 221 ) (1983), and Justice Smith's dissent in this case, infra.

[2] The application form in *Flewellen,* supra, had only one signature. Although the reproduction of that application found at 164 Ga. App. 893 shows the signature to be on the optional coverage page, that is the last page of the application and the signature is actually at the bottom of the application itself. The same is also true of the applications in *Jones v. State Farm Mut. Ins. Co.,* 156 Ga. App. 230 (274 SE2d 623) (1980), see 164 Ga. App. 895; *Colwell v. Voyager Cas. Ins. Co.,* 251 Ga. 744 ( 309 SE2d 617) (1983); and *Cotton States Mut. Ins. Co. v. McFather,* 251 Ga. 739 (309 SE2d 799) (1984). Compare the form in *Van Dyke v. Allstate Ins. Co.,* 250 Ga. 709 (300 SE2d 673) (1983), found at 164 Ga. App. 894.

Attached hereto is a copy of the application signed by Mrs. Nalley. Mrs. Nalley's choice of basic PIP coverage ($5000) is clearly indicated by an "X" in a box.[3] While the optional coverage application has only one signature, that signature was made in conjunction with a "STATEMENT OF REJECTION BY NAMED INSURED: I reject all Optional Coverages not requested and completed on application for Family Automobile Insurance Coverages and Supplemental Application *for Personal Injury Protection* coverages." (Emphasis supplied.) It is clear *from the form* that the intent of the insured was to reject optional PIP benefits. Thus, in my view, the form is in substantial compliance with the statutory requirement, OCGA § 1-3-1(c) (Code Ann. § 102-102), and satisfies the intent of the General Assembly to ensure " 'that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing.*' " *Flewellen,* supra, 250 Ga. at 714.

The insured clearly rejected optional PIP benefits and a claim for such benefits should not now be entertained. While I believe this court should have decided this case based upon the reasons stated above,[4] I concur in the dismissal of the writ.

I am authorized to state that Justice Weltner joins in this special concurrence.

GULF INSURANCE GROUP

## SUPPLEMENTAL APPLICATION — GEORGIA

☐ NEW POLICY — INCLUDE COVERAGES AS INDICATED
☐ IN-FORCE POLICY — REQUEST FOR CHANGE(S) AS INDICATED — POLICY #_____

PERSONAL INJURY PROTECTION    ☐ ADD    ☐ CHANGE

☒ BASIC COVERAGE — $5,000.

☐ OPTION 1 — $10,000. (5,000. BASIC + 5,000 ADD'L.)

---

[3] There is no issue in this case regarding the adequacy of the form as to property damage.

[4] Our grant of certiorari in this case was not specifically directed to the substantial compliance issue and we have a case pending, *St. Paul Mercury Ins. Co. v. Nixon,* Case No. 39850, which expressly raises that issue.

☐ OPTION 2 — 25,000. (5,000. BASIC + 20,000. ADD'L.)

☐ OPTION 3 — 50,000. (5,000. BASIC + 45,000. ADD'L.)

LOSS OF USE COVERAGE

| CAR # 1 | CAR # 2 | CAR # 3 | CAR # 4 |
|---------|---------|---------|---------|
| ☐ ADD | ☐ ADD | ☐ ADD | ☐ ADD |
| ☐ DELETE | ☐ DELETE | ☐ DELETE | ☐ DELETE |

NOTE: STATEMENT OF REJECTION BY NAMED INSURED:

I reject all Optional Coverages not requested and completed on application for Family Automobile Insurance Coverages and Supplemental Application for Personal Injury Protection Coverages

DATE: _8-23-77_          NAMED INSURED /s/ 1
                                         (Signature)

SMITH, Justice, dissenting.

This is a no-fault insurance case presenting the issue of whether the insured accepted or rejected optional personal injury protection (PIP) benefits. The Court of Appeals held that a "Supplementary Application-Georgia" form by which Nalley, the insured, rejected optional PIP coverage was a sufficient writing to satisfy the requirements of OCGA § 33-34-5(c) (Code Ann. § 56-3404b), prior to its amendment in Ga. L. 1982, p. 1234. *Nalley v. Select Ins. Co.,* 165 Ga. App. 345 (299 SE2d 172) (1983). I dissent to this court's decision to vacate the granted writ of certiorari and would reverse the decision of the Court of Appeals.

Kay Nalley was killed in a hit-and-run accident in 1981. At the time of her death she was the named insured on an automobile insurance policy issued by Select Insurance Co. In August 1977, Select presented to Nalley a document entitled "Supplemental Application-Georgia." By this document Select offered four PIP coverage categories, from "Basic Coverage-$5,000," to "Option 3-$50,000," arranged vertically on the page with a single box to the left of each category. The form did not offer any property damage coverage. The "Basic Coverage-$5,000" box is marked "X", and the others are blank. The application is signed by Nalley on the "Named Insured" line and dated. Above this line is pre-printed text reading: "I reject all optional coverages not requested and completed on application for Family Automobile Insurance Coverages and Supplemental Application for Personal Injury Protection."

Nalley's survivors tendered the premium for full PIP benefits of $50,000 and demanded payment. Select paid $5,000 but refused additional benefits. The survivors thereupon filed suit to collect the additional $45,000, contending that they were so entitled because

Select failed to procure from Nalley a proper rejection of the optional personal injury protection coverages for no-fault insurance under OCGA § 33-34-5(b) (Code Ann. § 56-3404b). Both sides moved for summary judgment, and Select's motion was granted.

I disagree with the Court of Appeals that OCGA § 33-34-5(c) applies to or controls this case.

The Georgia Motor Vehicle Accident Reparations Act ("no-fault") was enacted in the 1974 session of the General Assembly, Ga. L. 1974, p. 113. The Act made it unlawful to own or operate a motor vehicle in this state unless minimum statutory insurance was obtained, and made a violation of that requirement a misdemeanor. This minimum is set forth in OCGA § 33-34-4 (Code Ann. § 56-3403b). The Act made it mandatory upon insurance companies issuing policies in this state to offer PIP coverage in aggregate benefits up to $50,000 and property damage (PD) protection up to the cash value of the vehicle and loss of use up to $300.

The 1974 Act made some of its provisions effective on October 1, 1974. These included provisions relating to the promulgation of rules and regulations by the Insurance Commissioner, requiring proof of insurance to license a vehicle in this state as of January 1, 1975, and provisions for misdemeanor punishment for no insurance. It then provided, "All other provisions of this Act shall become effective on March 1, 1975, and shall not apply to accidents or injuries occurring before said date." Ga. L. 1974, p. 124.

As originally enacted, what is now OCGA § 33-34-5 (Code Ann. § 56-3404b) did not contain subsections (c) and (d). Subsection (a) required that PIP be offered up to $50,000 provided that the $50,000 could be reduced or rejected down to $5,000 by the written consent of the policyholder. Subsection (b) set forth the requirements for applications for automobile insurance which we dealt with in *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709 (300 SE2d 673) (1983).

Since the 1974 Act did not provide for the handling of policies which would be in effect at the time the no-fault law was to become effective on March 1, 1975, the Insurance Commissioner issued regulations effective October 1, 1974, to cover this transition period. The regulations provided that as of March 1, 1975, the optional benefits of OCGA § 33-34-5 (Code Ann. § 56-3404b) would be added to each policy unless the insured reduced or rejected that amount in writing. (Apparently he was relying on the language in subsection (a) for this disposition.) The insurance commissioner's rules and regulations provided a sample letter to be mailed to all policyholders.

When the General Assembly met in 1975 they passed an amendment now included as OCGA § 33-34-5 (c) (Code Ann. § 56-3404b). See Ga. L. 1975, p. 3. It is clear that paragraph (c) was

added in response to the regulations of the insurance commissioner and was to apply to policies already in effect on March 1, 1975. Therefore, paragraph (c) does not apply to those cases where the policy was issued after March 1, 1975. The record in the present case shows that Nalley's insurance policy was issued November 4, 1976, and the "Supplementary Application-Georgia" form was presented to her almost a year later, in 1977. Consequently, this case falls under OCGA § 33-34-5(b) (Code Ann. § 56-3404b), and our interpretation of that paragraph in *Flewellen v. Atlanta Cas. Co.,* supra.

Construed in light of this court's opinion in *Flewellen,* supra, the "Supplemental Application-Georgia" employed by Select to establish the deceased's agreement to reduced PIP coverage from $50,000 to $5,000 was not sufficient and it does not comply with the terms of paragraph (b). See *Atlanta Cas. Co. v. Flewellen,* 164 Ga. App. 885, Appendix II (300 SE2d 166) (1982), for an example of a satisfactory form. *Flewellen v. Atlanta Cas. Co.,* 250 Ga., supra. Paragraph (b) clearly states that each *application* must contain separate spaces for the insured to indicate acceptance or rejection of personal injury and *property damage coverage.* It is equally clear that Nalley was not offered the opportunity to accept or reject this coverage simultaneously with her original application for insurance with Select. Select also failed to offer on its "Supplemental Application-Georgia" form property damage coverage as required by OCGA § 33-34-5(a) and (b) (Code Ann. § 56-3404b). Thus the form here was untimely in that it did not accompany Nalley's original application which resulted in the issuance of a policy of motor vehicle liability insurance in 1976, and inadequate in omitting an offer of property damage coverage and a second signature indicating acceptance or rejection of that coverage as well. For these reasons I would reverse the Court of Appeals decision.

Allowing the opinion of the Court of Appeals to stand alongside the proposed ground of decision in the special concurrence to the dismissal of the writ of certiorari adds yet another category of cases and problems under the no-fault laws. We do not need any more exceptions, particularly when *Flewellen* already answers the particular question presented here.